FILED
DISTRICT COURT
DISTRICT OF MARYLAND

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION

2008 JAN -7  P 1: 57

L08CV 054

|  |  |
|---|---|
| W.L. GORE & ASSOCIATES, INC., *555 Papermill Road* *Newark, DE 19711* Plaintiff v. SAINT-GOBAIN  PERFORMANCE  PLASTICS CORPORATION, *750 East Swedesford Road* *Valley Forge, PA 19482* Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Civil Action No. _____

**JURY TRIAL REQUESTED**

## COMPLAINT

Plaintiff, W.L. Gore & Associates, Inc. ("Gore"), by its attorneys, for its Complaint against Defendant, Saint-Gobain Performance Plastics Corporation ("Saint-Gobain"), alleges as follows:

### NATURE OF THE ACTION

1.      This is an action for declaratory judgment that U.S. Patents Nos. 6,290,265 and 7,093,859 are not infringed by Gore, are invalid, and/or are unenforceable.

2.      This also is an action seeking damages resulting from Saint-Gobain's unfair competition, defamation, and injurious falsehood under Maryland law.

### THE PARTIES

3.      Gore is a Delaware corporation having its principal place of business at 555 Papermill Road, Newark, DE 19711.  Gore develops and manufactures thousands of advanced

technology products for the electronics, industrial, fabrics, and medical markets that are sold throughout the United States, including within the District of Maryland.

4.      On information and belief, Saint-Gobain is a California corporation with its principal place of business at 750 East Swedesford Road, Valley Forge, PA 19482.  Saint-Gobain develops and manufactures technology products for the electronics, industrial, fabrics, and medical markets that are sold throughout the United States, including within the District of Maryland.

**JURISDICTION AND VENUE**

5.      The federal law claims asserted in this Complaint are brought pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and arise under the patent laws of the United States, 35 U.S.C. §§ 100, *et seq*.

6.      The state law claims asserted in the Complaint are brought pursuant to Maryland common law.

7.      This Court has subject matter jurisdiction over the federal law claims asserted in this Complaint under 28 U.S.C. §§ 1331 and/or 1338(a) because the subject of those claims is the alleged non-infringement, invalidity, and unenforceability of United States patents and under 28 U.S.C. § 1332(a) because of diversity of citizenship and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

8.      This Court has subject matter jurisdiction over one or more of the state law claims asserted in this Complaint under 28 U.S.C. § 1338(a) because 1338(a) jurisdiction extends those cases in which the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, including patent validity and enforceability.

9.     This Court also has supplemental jurisdiction over the state law claims asserted in this Complaint under 28 U.S.C. § 1367 because the state claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

10.     This Court has personal jurisdiction over Saint-Gobain as Saint-Gobain has caused tortious injury in Maryland and/or outside of Maryland by an act or omission outside of Maryland and regularly does or solicits business, engages in other persistent course of conduct in Maryland and/or derives substantial revenue from goods, services, or manufactured products used or consumed in Maryland.

11.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400 because Saint-Gobain regularly sells its products in this District.

## THE PATENTS AT ISSUE

12.     U.S. Patent No. 6,290,265 (the "'265 patent"), entitled "Tubing And Connector Assembly And Method And Molding," was issued on September 18, 2001 to Stephen Ronald Warburton-Pitt and Rick Alan Steele.  A copy of the '265 patent is attached as Exhibit A.

13.     Saint-Gobain purports to be the owner of the '265 patent and purports to have been the owner at all times during the *ex parte* reexamination of the '265 patent.

14.     U.S. Patent No. 7,093,859 (the "'859 patent") entitled "Tubing And Connector Assembly," was issued on August 22, 2006 to Stephen Ronald Warburton-Pitt and Rick Alan Steele.  A copy of the '859 patent is attached as Exhibit B.

15.     Saint-Gobain purports to be the owner of the '859 patent and purports to have been the owner of the Patent Application Serial No. 10/785,549 at all times during its

prosecution leading to the issuance of the '859 patent.

**PRIOR LITIGATION, PATENT PROSECUTION AND
REEXAMINATION, INEQUITABLE CONDUCT, AND FRAUD**

16.     On or about August 11, 1997, named inventors Stephen Ronald Warburton-Pitt and Rick Alan Steele filed Patent Application Serial No. 08/909,450 (the "'450 application") in the United States Patent and Trademark Office ("USTPO").

17.     On information and belief, Warburton-Pitt and Steele knowingly failed to disclose material information and submitted materially false information to the USPTO, with intent to mislead or deceive the USPTO examiner, during prosecution of the '450 application leading to the issuance of the '265 patent.

18.     The '450 application included a Declaration, Power Of Attorney, And Petition signed by Warburton-Pitt and Steele on August 4, 1997 and including the statement that "I believe I am . . . an original, first and joint inventor . . . of the subject matter which is claimed and for which a patent is sought on the invention entitled:   TUBING AND CONNECTOR ASSEMBLY AND METHOD OF MOLDING the specification of which . . . is attached hereto." ." The application also included Warburton-Pitt's and Steele's acknowledgement of their duty of candor in dealing with the USPTO.

19.     Silicone molded manifolds designed, manufactured, and sold by Sani-Tech, Inc. and others, including such manifolds having three or more flexible silicone tubes molded into a silicone connector, fitting, or assembly, were material prior art prior to August 11, 1996 and, on information and belief, were known to Warburton-Pitt and Steele prior to August 11, 1997 when they filed the '450 application and during prosecution of that application.

20.     On information and belief, Warburton-Pitt and Steele failed to disclose such Sani-

Tech and other molded manifold prior art to the USPTO during prosecution of the '450 application with (i) knowledge of their duty of candor owed to the USTPO, (ii) knowledge that such prior art was material, and (iii) intent to mislead or deceive the USPTO examiner.

21.     The specification of the '450 application, which was reviewed by Warburton-Pitt and Steele, and filed in the USPTO, included the following materially false statement regarding the prior art: "to Applicant's knowledge, there has never been an acceptable method of directly molding a multi-lumen connector to three or more flexible tubes."  This statement was false because, on information and belief, prior to August 11, 1997 when they filed the '450 application, and during the prosecution of that application, Warburton-Pitt and Steele knew that Sani-Tech, Inc. and others, prior to August 11, 1996, had an acceptable method to manufacture silicone molded manifolds, including those having three or more flexible silicone tubes molded into a silicone connector, fitting, or assembly.  This statement was material because it directly related to an alleged basis for asserting novelty of the alleged inventions claimed in the '450 application.

22.     On information and belief, Warburton-Pitt and Steele submitted such false information to the USPTO during prosecution with (i) knowledge of their duty of candor owed to the USTPO, (ii) knowledge that such information was material, and (iii) intent to mislead or deceive the USPTO examiner.

23.     On information and belief, the USPTO examiner justifiably relied upon and was deceived by such material omissions and false statements by Warburton-Pitt and Steele and was thereby induced to act upon and ultimately caused the USTPO to unjustifiably grant the '265 patent.

24.     On or about September 18, 2001, the USPTO issued the '265 patent based upon the '450 application.

25.     On or about May 14, 2003, Saint-Gobain filed a complaint in the United States District Court For The Western District of Wisconsin (Civil Action No. 03-C-0243-S), alleging that Truseal USA, Inc., a company solely owned by Warburton-Pitt, infringed the '265 patent.

26.     On information and belief, Truseal USA, Inc. employed both named inventors Warburton-Pitt and Steele and defended Saint-Gobain's Wisconsin litigation activity, in part, by asserting the '265 patent was invalid, including based upon Sani-Tech prior art and other information known to Warburton-Pitt and Steele.

27.     On or about November 12, 2003, Warburton-Pitt, operating through his solely owned company Truseal USA, Inc., filed with the USPTO a Request For *Ex Parte* Reexamination of the '265 patent based upon pages of a 1991 catalog showing silicone molded products manufactured and sold by Sani-Tech, Inc., including silicone molded manifolds having three or more flexible silicone tubes molded into a silicone connector, fitting, or assembly.  In its Request For *Ex Parte* Reexamination, Truseal USA, Inc. (as directed by its sole owner Warburton-Pitt) stated that "The Sani-Tech catalog fully anticipates Claims 1 and 3-8 of the '265 patent and renders Claim 2 obvious."

28.     On or about November 20, 2003, Saint-Gobain voluntarily withdrew its complaint in the United States District Court For The Western District of Wisconsin with intent to re-file in the United States District Court For The District Of New Jersey and continue to allege that Truseal USA, Inc., a company solely owned by Stephen Warburton-Pitt, infringed the '265 patent.

29.     On or about February 5, 2004, the USPTO issued an Order Granting Request For *Ex Parte* Reexamination of the '265 patent "because the Sani-Tech catalog discloses a device in the same field of endeavor having a resilient tubular assembly connecting at least three flexible tubes" and "raises a substantial new question of patentability as to claims 1-8, which question has not been decided in a previous examination of the 6,290,265 patent." The Order granting *ex parte* reexamination included a statement that "[t]he patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving Patent No. [sic] throughout the course of this reexamination proceeding."

30.     On February 24, 2004, Saint-Gobain filed in the USPTO an application assigned Patent Application Serial No. 10/785,549 (the "'549 application"), which was a continuation of Patent Application Serial No. 09/951,366, filed on September 13, 2001, which was a divisional of Patent Application Serial No. 08/909,450, filed on August 11, 1997. The '549 application ultimately issued as the '859 patent. The USPTO examiner assigned to the '859 patent prosecution, James M. Hewitt, was not the same USPTO examiner assigned to the '265 patent *ex parte* reexamination, David E. Bochna.

31.     On information and belief, patentee Saint-Gobain (including those individuals substantively involved in the prosecution of the '549 application) knowingly failed to disclose material information and submitted materially false information to the USPTO, with intent to mislead or deceive the USPTO examiner, during the prosecution of the '549 application.

32.     The '549 application included a copy of the August 4, 1997 Declaration, Power Of Attorney, And Petition signed by Warburton-Pitt and Steele, including the statement that "I

believe I am . . . an original, first and joint inventor . . . of the subject matter which is claimed and for which a patent is sought on the invention entitled:  TUBING AND CONNECTOR ASSEMBLY AND METHOD OF MOLDING the specification of which . . . is attached hereto." The application also included Warburton-Pitt's and Steele's acknowledgement of their duty of candor in dealing with the USPTO.

33.    Also on February 26, 2004, Saint-Gobain filed in the '549 application an Information Disclosure Statement attaching copies of Truseal USA, Inc.'s Request For *Ex Parte* Reexamination of the '265 patent, Order Granting Request For *Ex Parte* Reexamination of the '265 patent, and the documents cited in the Request For *Ex Parte* Reexamination.

34.    Saint-Gobain's February 26, 2004 Information Disclosure Statement did not disclose that Truseal USA, Inc. was a company solely owned by named inventor Warburton-Pitt.

35.    That named inventor Warburton-Pitt was the sole owner of Truseal USA, Inc. – requester of the '265 patent reexamination, submitter of the 1991 Sani-Tech prior art, and source of the statement that "[t]he Sani-Tech catalog fully anticipates Claims 1 and 3-8 of the '265 patent and renders Claim 2 obvious" – was highly material information for the USPTO examiner because, *inter alia*, it directly conflicted with the statements from named inventors Warburton-Pitt and Steele:  (1) in the patent specification that "to Applicant's knowledge, there has never been an acceptable method of directly molding a multi-lumen connector to three or more flexible tubes[;]" and (2) in the inventors' declaration that they were the "an original, first and joint inventor . . . of the subject matter which is claimed and for which a patent is sought on the invention entitled:  TUBING AND CONNECTOR ASSEMBLY AND METHOD OF MOLDING the specification of which . . . is attached hereto."

36.     On information and belief, Saint-Gobain knowingly failed to disclose such material information to the USPTO during prosecution with (i) knowledge of its duty of candor owed to the USTPO, (ii) knowledge that such information was material, and (iii) intent to mislead or deceive the USPTO examiner.

37.     On information and belief, the USPTO examiner justifiably relied upon and was deceived by Saint-Gobain's knowing failure to disclose such material information and was thereby induced to act upon and ultimately caused the USTPO to unjustifiably grant the '859 patent.

38.     On or about August 6, 2004, Saint-Gobain filed a complaint in the United States District Court For The District Of New Jersey (Civil Action No. 2:04-cv-005546-JAP), alleging that Warburton-Pitt and Truseal USA, Inc., a company solely owned by Warburton-Pitt, infringed the '265 patent.

39.     On information and belief, Truseal USA, Inc. employed both named inventors Warburton-Pitt and Steele and defended Saint-Gobain's New Jersey litigation activity, in part, by asserting the '265 patent was invalid, including based upon Sani-Tech prior art and other information known to Warburton-Pitt and Steele.

40.     On information and belief, Saint-Gobain did not disclose Saint-Gobain's New Jersey litigation activity to the USPTO examiner in the '265 reexamination despite Saint-Gobain's knowledge that such USPTO examiner had expressly reminded Saint-Gobain of its obligation to do so in the Order Granting Request For *Ex Parte* Reexamination.

41.     On information and belief, Saint-Gobain did not disclose to the USPTO examiner in the '859 patent prosecution Saint-Gobain's New Jersey litigation activity.

42.     On or about December 2, 2004, the USPTO examiner in the '859 patent prosecution issued a Non-Final Office Action rejecting some claims and objecting to other claims and set a shortened statutory period for reply of three (3) months, establishing a reply deadline on or about March 2, 2005.

43.     On or about March 17, 2005, the USPTO examiner in the '265 patent reexamination issued an Office Action rejecting all previously issued claims of the '265 patent as either anticipated by or obvious in light of the Sani-Tech prior art previously filed by Truseal USA, Inc. with the Request For *Ex Parte* Reexamination of the '265 patent. This Office Action also set a shortened statutory period for reply of two (2) months, establishing a reply deadline on or about May 17, 2005.

44.     On or about April 4, 2005, Saint-Gobain filed with the USPTO in the '859 patent prosecution its Response To Office Action and an Information Disclosure Statement – both of which failed to disclose that the USPTO examiner with respect to the '265 patent reexamination issued an Office Action on March 17, 2005 rejecting all previously issued claims of the '265 patent as either anticipated by or obvious in light of the Sani-Tech prior art.

45.     That the USPTO examiner with respect to the '265 patent reexamination issued an Office Action on March 17, 2005 rejecting all previously issued claims of the '265 patent as either anticipated by or obvious in light of the Sani-Tech prior art was highly material information for the USPTO examiner with respect to the '859 patent prosecution because, *inter alia*, (1) the '265 patent reexamination and '859 patent prosecution were closely-related applications that shared identical specifications; (2) the '265 patent reexamination and '859 patent prosecution included nearly identical prior art citations and disclosures; and (3) the

rejection of all claims based upon the Sani-Tech prior art (unbeknownst the USPTO examiner with respect to the '265 patent reexamination but known to Saint-Gobain) directly conflicted with named statements of named inventors Warburton-Pitt and Steele that:   (a) in the specification that "to Applicant's knowledge, there has never been an acceptable method of directly molding a multi-lumen connector to three or more flexible tubes[;]" and (b) in the inventors' declaration that they believed they were the " original, first and joint inventor . . . of the subject matter which is claimed and for which a patent is sought on the invention entitled: TUBING AND CONNECTOR ASSEMBLY AND METHOD OF MOLDING the specification of which . . . is attached hereto."

46.    On information and belief, Saint-Gobain knowingly failed to disclose such material information to the USPTO during prosecution with (i) knowledge of its duty of candor owed to the USTPO, (ii) knowledge that such information was material, and (iii) intent to mislead or deceive the USPTO examiner.

47.    On information and belief, the USPTO examiner justifiably relied upon and was deceived by Saint-Gobain's knowing failure to disclose such material information and was thereby induced to act upon and ultimately caused the USTPO to unjustifiably grant the '859 patent.

48.    On or about April 26, 2005, the USPTO examiner in the '859 patent prosecution issued a Notice Of Allowance with respect to claims which ultimately issued as claims 1-18 of the '859 patent on August 22, 2006.

49.    On or about July 19, 2005, Saint-Gobain filed in the '265 patent reexamination Saint-Gobain's (i) Petition To Revive the '265 patent, which had become abandoned by Saint-

Gobain's failure to respond by on or about May 17, 2005 to the examiner's March 17, 2005 Office Action, and (ii) Response To Office Action.

50.     Saint-Gobain's July 19, 2005 Response To Office Action included several false material statements advanced with the intent to overcome the wholesale rejection of all '265 patent claims based upon the Sani-Tech prior art, including the false material statement that "Patentee respectfully submits that the Sani-Tech Catalog fails to disclose (or even remotely suggest) an integral connector in which at least three flexible tubes are molded into respective connector portions of a multi-lumen connector (see claim 1), and fails to disclose (or even remotely suggest) a connector body having connector portions molded around respective connecting ends of at least three flexible tubes (see claim 5)."

51.     Saint-Gobain's July 19, 2005 Response To Office Action also included several misleading material statements that the disclosure in the Sani-Tech prior art was "unclear" or that various claim elements "cannot be ascertained" from such disclosure.

52.     Subsequently, the USPTO granted the Petition To Revive the '265 patent and on or about March 7, 2006, USPTO examiner in the '265 patent reexamination issued a Requirement For Information noting that Sani-Tech, author of the Sani-Tech prior art, was part of Saint-Gobain, owner of the '265 patent, and requesting, among other things, "to know if in fact [Saint-Gobain] is the owner of Sani-Tech, Inc. and if so does [Saint-Gobain] have an understanding of the technical material shown in the bottom right photograph of page 10 of the [1991] Sani-Tech catalog, particularly where a junction of four pipes are shown as being connected together by a single piece of material."

53.     On or about May 8, 2006, Saint-Gobain submitted to the USPTO in the '265

patent reexamination Saint-Gobain's Response To Requirement For Information, including the statement that "patent owner, Saint-Gobain Performance Plastics Corporation, confirms it is the owner of Sani-Tech, Inc."

54.     On information and belief, patentee Saint-Gobain (including those individuals substantively involved in the *ex parte* reexamination of the '265 patent) knowingly failed to disclose material information and submitted materially false information to the USPTO during the *ex parte* reexamination of the '265 patent with intent to mislead or deceive the USPTO examiner.

55.     Silicone molded manifolds designed, manufactured, and sold by Sani-Tech, Inc. and others, including those having three or more flexible silicone tubes molded into a silicone connector, fitting, or assembly, were material prior art know to persons in the industry prior to August 11, 1996 and, on information and belief, known to patentee Saint-Gobain during the reexamination of the '265 patent.

56.     On information and belief, in its May 8, 2006 Response To Requirement For Information in the reexamination of the '265 patent Saint-Gobain included the following materially false information:  "multi-lumen connector assemblies prior to the date of the . . . ['265] patent were understood by the patent owner to have been made by Sani-Tech through use of an adhesive (e.g., RTV), and were not made by utilizing a molding process."  This information was materially false because, on information and belief, during the reexamination of the '265 patent, Saint-Gobain knew that Sani-Tech, Inc. and others designed, manufactured, and sold silicone molded manifolds prior to August 11, 1996, including those having three or more flexible silicone tubes molded into a silicone connector, fitting, or assembly.

57.    On information and belief, Saint-Gobain submitted such false information to the USPTO during the reexamination with (i) knowledge of Saint-Gobain's duty of candor owed to the USTPO, (ii) knowledge that such information was material, and (iii) intent to mislead or deceive the USPTO examiner.

58.    On information and belief, the USPTO examiner justifiably relied upon and was deceived by such material omissions and false statements submitted by Saint-Gobain and was thereby induced to act upon and ultimately caused the USTPO to unjustifiably issue an *ex parte* reexamination certificate with respect to the '265 patent.

59.    On information and belief, in its May 8, 2006 Response To Requirement For Information in the reexamination of the '265 patent Saint-Gobain also included the following materially misleading information:  "many of Sani-Tech's employees are no longer employed by" Saint-Gobain.  This information was materially misleading because Saint-Gobain failed to mention that such former Sani-Tech employees included named inventor Warburton Pitt – whose solely owned company Truseal USA, Inc. had requested the reexamination based upon Sani-Tech prior art and who, on information and belief, defended against Saint-Gobain's Wisconsin and New Jersey litigation activity, in part, by asserting invalidity of the '265 patent.

60.    On information and belief, Saint-Gobain submitted such misleading information to the USPTO during the reexamination with (i) knowledge of Saint-Gobain's duty of candor owed to the USTPO, (ii) knowledge that such information was material, and (iii) intent to mislead or deceive the USPTO examiner.

61.    On information and belief, the USPTO examiner justifiably relied upon and was deceived by such material omission and misleading information submitted by Saint-Gobain and

was thereby induced to act upon and ultimately caused the USTPO to unjustifiably issue an *ex parte* reexamination certificate with respect to the '265 patent.

62.     On or about September 18, 2006, the USPTO examiner in the '265 patent reexamination issued a Notice Of Intent To Issue Ex Parte Reexamination Certificate with respect to all claims 1-8 of the '265 patent that ultimately issued March 27, 2007.

## UNFAIR COMPETITION

63.     On information and belief, in or around March 2002, Saint-Gobain began a pattern of bad faith accusations of patent infringement to manufacturers, distributors, and purchasers of silicone molded manifolds, and such conduct has continued.

64.     On information and belief, such bad faith conduct included a March 19, 2002 Saint-Gobain letter to Robert Aulicino, Vice President, Amesil, Inc., requesting that Amesil, Inc. not infringe the '265 patent.  This letter was sent with Saint-Gobain's knowledge that the Sani-Tech prior art withheld from the USPTO was invalidating prior art.

65.     On information and belief, such bad faith conduct included a November 8, 2004 Saint-Gobain letter to Teresa Roberts, Leading Innovative Products & Solutions, Inc., about the '265 patent, and then-pending related patent applications, and stating that "none of the claims of the '265 patent have been found invalid in the reexamination."  This letter was sent with Saint-Gobain's knowledge that the Sani-Tech prior art withheld from the USPTO was invalidating prior art.

66.     On information and belief, Saint-Gobain's bad faith conduct also included various oral and/or written communications from Saint-Gobain personnel having knowledge of the Sani-Tech invalidating prior art to distributors and/or purchasers silicone molded manifolds, including

Merck & Co., Inc. and other of Gore's customers or potential customers, asking that they terminate or not enter contracts for such manifolds other than from Saint-Gobain because Saint-Gobain owned the '265 patent and/or '859 patent and could disrupt any non-Saint-Gobain sources of supply by enforcing Saint-Gobain's patent rights.  These communications were made with Saint-Gobain's knowledge that the Sani-Tech prior art withheld from the USPTO was invalidating prior art.

## THE CURRENT DISPUTE AND FALSE AND
## DEFAMATORY STATEMENTS

67.    On or about February 28, 2007, Gore acquired from Amesil, Inc. certain assets, including those relative to Amesil, Inc.'s design, manufacture, and sale of silicone molded manifolds.

68.    Subsequent to acquiring such assets from Amesil, Inc., Gore has continued Amesil, Inc.'s business of designing, manufacturing, and selling silicone molded manifolds.

69.    On or about November 27, 2007, Saint-Gobain filed a complaint against Amesil, Inc., Dow Corning Corporation, Trelleborg Sealing Solutions US, Inc., Mitos Technologies, Inc., NewAge Industries, Inc., and J & J Scientific Products, Inc. alleging, in part, that Amesil, Inc. has willfully infringed and continues to willfully infringe the '265 and '859 patents, including by making and selling molded unions and manifolds.  A copy of the Saint-Gobain complaint is attached as Exhibit C.

70.    Saint-Gobain's complaint did not name Gore as a defendant, but rather alleged that Amesil, Inc. is "a subsidiary of W.L. Gore & Associates, Inc."

71.    On or about November 28, 2007, Saint-Gobain published a press release stating that Saint-Gobain is "seeking injunctive relief and damages for . . . six defendants' infringement

of Saint-Gobain's U.S. Patent Nos. 7,093,859 and 6,290,265[,]" expressly including "Amesil, Inc. (a subsidiary of W. L. Gore & Associates, Inc.)[,]" and that the "Saint-Gobain patents cover molded tubing and connector assemblies (referred to as 'manifolds') typically used for pharmaceutical applications." Saint-Gobain published the press release for the express purpose "to ensure customers know . . . with [Saint-Gobain's] patented system they have peace of mind" not provided by "competitors . . . claiming that another product offers the same benefits[.]"

72.    Saint-Gobain's press release is a false and defamatory statement because, *inter alia*, it asserts that Saint-Gobain holds exclusive rights to manifolds covered by one or both of U.S. Patents Nos. 7,093,859 and 6,290,265 when such patents were known to them to be invalid and unenforceable, including because of Saint-Gobain's inequitable conduct and fraud upon the USPTO as alleged herein.

73.    On information and belief, Saint-Gobain has, in bad faith and with malice and/or negligently, distributed or otherwise communicated its press release, including through emails, to purchasers and/or manufacturers, including Amgen Inc. and other of Gore's customers and potential customers.

74.    Saint-Gobain's pattern of asserting the '265 and '859 patents and the recently filed complaint alleging infringement of the '265 and '859 patents by Amesil, Inc. – allegedly "a subsidiary of W.L. Gore & Associates, Inc." – has created a present substantial controversy between Saint-Gobain and Gore concerning making and selling silicone molded manifolds and has created an apprehension that Saint-Gobain will sue Gore for alleged infringement of the '265 and '859 patents.

75.    Gore desires to sell its products free from the specter of Saint-Gobain's

allegations of infringement of the '265 and '859 patents.

## COUNT I
**(Declaratory Judgment Of Non-Infringement of United States Patent No. 6,290,265)**

76.     Gore repeats and realleges the allegations contained in preceding paragraphs 1-75, inclusive, as if fully set forth herein.

77.     Gore's products do not infringe any valid claim of the '265 patent.

78.     As a consequence of the foregoing, there is an actual and justiciable controversy between Saint-Gobain and Gore regarding the issue of infringement of the '265 patent, with respect to which Gore is entitled a declaratory judgment in its favor.

## COUNT II
**(Declaratory Judgment Of Invalidity of United States Patent No. 6,290,265)**

79.     Gore repeats and realleges the allegations contained in preceding paragraphs 1-78, inclusive, as if fully set forth herein.

80.     The '265 patent is invalid under one or more provisions of Title 35 of the United States Code, including without limitation the provisions of 35 U.S.C. §§ 101, 102, 103, 112 and/or 116.

81.     As a consequence of the foregoing, there is an actual and justiciable controversy between Saint-Gobain and Gore regarding the validity of the '265 patent, with respect to which Gore is entitled a declaratory judgment in its favor.

## COUNT III
**(Declaratory Judgment Of Unenforceability of United States Patent No. 6,290,265)**

82.     Gore repeats and realleges the allegations contained in preceding paragraphs 1-81, inclusive, as if fully set forth herein.

83.     The '265 patent is unenforceable due to inequitable conduct on the part of Warburton-Pitt and Steele for intentionally concealing material information from the USPTO, including as set for in paragraphs 12-62 above.

84.     The '265 patent is unenforceable due to inequitable conduct on the part of Warburton-Pitt and Steele for intentionally submitting false or misleading material information to the USPTO, including as set for in paragraphs 12-62 above.

85.     The '265 patent is unenforceable due to inequitable conduct on the part of Saint-Gobain (including those individuals substantively involved in the *ex parte* reexamination of the '265 patent) for intentionally concealing material information from the USPTO, including as set for in paragraphs 12-62 above.

86.     The '265 patent is unenforceable due to inequitable conduct on the part of Saint-Gobain (including those individuals substantively involved in the *ex parte* reexamination of the '265 patent) for intentionally submitting false or misleading material information to the USPTO, including as set for in paragraphs 12-62 above.

87.     As a consequence of the foregoing, there is an actual and justiciable controversy between Saint-Gobain and Gore regarding the enforceability of the '265 patent, with respect to which Gore is entitled a declaratory judgment in its favor.

## COUNT IV
### (Declaratory Judgment Of Non-Infringement of United States Patent No. 7,093,859)

88.     Gore repeats and realleges the allegations contained in preceding paragraphs 1-87, inclusive, as if fully set forth herein.

89.     Gore's products do not infringe any valid claim of the '859 patent.

90.     As a consequence of the foregoing, there is an actual and justiciable controversy

between Saint-Gobain and Gore regarding the issue of infringement of the '859 patent, with respect to which Gore is entitled a declaratory judgment in its favor.

## COUNT V
### (Declaratory Judgment Of Invalidity of United States Patent No. 7,093,859)

91.     Gore repeats and realleges the allegations contained in preceding paragraphs 1-90, inclusive, as if fully set forth herein.

92.     The '859 patent is invalid under one or more provisions of Title 35 of the United States Code, including without limitation the provisions of 35 U.S.C. §§ 101, 102, 103, 112 and/or 116.

93.     As a consequence of the foregoing, there is an actual and justiciable controversy between Saint-Gobain and Gore regarding the validity of the '859 patent, with respect to which Gore is entitled a declaratory judgment in its favor.

## COUNT VI
### (Declaratory Judgment Of Unenforceability of United States Patent No. 7,093,859)

94.     Gore repeats and realleges the allegations contained in preceding paragraphs 1-93, inclusive, as if fully set forth herein.

95.      The '859 patent is unenforceable due to inequitable conduct on the part of Warburton-Pitt and Steele for intentionally concealing material information from the USPTO, including as set for in paragraphs 12-62 above.

96.     The '859 patent is unenforceable due to inequitable conduct on the part of Warburton-Pitt and Steele for intentionally submitting false or misleading material information to the USPTO, including as set for in paragraphs 12-62 above.

97.     The '859 patent is unenforceable due to inequitable conduct on the part of Saint-

Gobain (including those individuals substantively involved in the *ex parte* reexamination of the '265 patent) for intentionally concealing material information from the USPTO, including as set for in paragraphs 12-62 above.

98.     The '859 patent is unenforceable due to inequitable conduct on the part of Saint-Gobain (including those individuals substantively involved in the *ex parte* reexamination of the '265 patent) for intentionally submitting false or misleading material information to the USPTO, including as set for in paragraphs 12-62 above.

99.     As a consequence of the foregoing, there is an actual and justiciable controversy between Saint-Gobain and Gore regarding the enforceability of the '859 patent, with respect to which Gore is entitled a declaratory judgment in its favor.

## COUNT VII
### (Unfair Competition Under Maryland Law)

100.     Gore repeats and realleges the allegations contained in preceding paragraphs 1-99, inclusive, as if fully set forth herein.

101.     On information and believe, Saint-Gobain obtained and continues to maintain ownership of the '265 and/or '859 patents through acts of dishonesty and deception, as described above, and asserted such patents against Gore and distributors and purchasers of Gore silicone molded manifolds in bad faith with knowledge of the invalidating Sani-Tech prior art.

102.     On information and believe, Saint-Gobain's acts of dishonesty and deception include its publication and distribution of a press release, including false and defamatory statements and constitute deceitful and unfair practices that have damaged and/or jeopardized Gore's business.

103.     Gore's business was and continues to be damaged and/or jeopardized by Saint-

Gobain's unfair competition.

## COUNT VIII
### (Defamation Under Maryland Law)

104.    Gore repeats and realleges the allegations contained in preceding paragraphs 1-103, inclusive, as if fully set forth herein.

105.    On multiple occasions, Saint-Gobain has published to third parties false and defamatory statements disparaging Gore's business reputation.

106.    Saint-Gobain's false and defamatory statements to third parties have included statements that a subsidiary of Gore, *inter alia*, infringes the '265 and '859 patents owned by Saint-Gobain.

107.    Saint-Gobain has made the aforementioned false and defamatory statements about Gore with malice.

108.    In the alternative, Saint-Gobain negligently has made the aforementioned false and defamatory statements about Gore.

109.    Gore has and continues to suffer harm as a result of Saint-Gobain's false and defamatory statements.

## COUNT IX
### (Injurious Falsehood Under Maryland Law)

110.    Gore repeats and realleges the allegations contained in preceding paragraphs 1-109, inclusive, as if fully set forth herein.

111.    On information and belief, Saint-Gobain has, knowingly and with malice, published to third parties false statements that have caused Gore to incur costs, including litigation costs and attorneys fees incurred in responding to Saint-Gobain's false statements,

recoverable as special damages.

112.    Saint-Gobain's knowingly false statements made to third parties with malice have included false statements in Saint-Gobain's press release, including, *inter alia*, that Saint-Gobain holds exclusive rights to manifolds covered by one or both of U.S. Patent Numbers 7,093,859 and 6,290,265 when such patents are invalid and unenforceable in view of Saint-Gobain's inequitable conduct and fraud upon the USPTO as alleged herein.

113.    Gore has and continues to incur special damages as a result of Saint-Gobain's false statements.

## PRAYER FOR RELIEF

WHEREFORE, Gore respectfully requests that following relief:

a.    entry of judgment declaring that Gore has not infringed – directly, contributorily, or by inducement – any valid claim of the '265 and '859 patents;

b.    entry of judgment declaring that the '265 and '859 patents are invalid;

c.    entry of judgment declaring that the '265 and '859 patents are unenforceable;

d.    entry of an order permanently enjoining Saint-Gobain from making further or other threats of patent infringement or bringing actions for patent infringement against Gore and any of its customers and potential customers with respect to the '265 and '859 patents;

e.    entry of judgment declaring this to be an exceptional case pursuant to 35 U.S.C. § 285 and awarding Gore its reasonable attorneys' fees expended in bringing and maintaining this action;

  f.  entry of an order awarding Gore the full measure of damages available under Maryland law for Saint-Gobain's unfair competition, defamation, and injurious falsehoods.

  g.  entry of an order awarding Gore all of its costs of this action; and

  h.  entry of an order awarding Gore such other and further relief as the Court deems just and proper.

     PAUL, HASTINGS, JANOFSKY & WALKER LLP

     By _____

     Mark Koehn (D.Md. Bar No.16227)
     PAUL, HASTINGS, JANOFSKY & WALKER LLP
     875 Fifteenth Street, NW
     Washington, DC 20005
     202.551.1700 (telephone)
     202.551.1705 (fax)

     markkoehn@paulhastings.com

     OF COUNSEL

     Lawrence J. Gotts
     Brandon White
     PAUL, HASTINGS, JANOFSKY & WALKER LLP
     875 Fifteenth Street, NW
     Washington, DC 20005
     202.551.1700 (telephone)
     202.551.1705 (fax)

     lawrencegotts@paulhastings.com
     brandonwhite@paulhastings.com

     Attorneys for Plaintiff, W.L. Gore & Associates, Inc.

January 7, 2008